UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GJMS, LLC, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )     No. 2:18 CV 135 |
| | ) |
| HAMSTRA BUILDERS, INC., *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

## OPINION and ORDER

This matter is before the court on plaintiff's motion for partial summary judgment. (DE # 103.) For the reasons set forth below, the motion is denied.

**I.  BACKGROUND**

GJMS, LLC ("GJMS") is an Indiana LLC, which was organized in 2009 for the purpose of acquiring, owning, and managing real estate. (DE # 104.) Several documents were executed at the business's inception. First, the Operating Agreement set forth the overall structure and organization of the business. (DE # 105.) This document also set forth the business's Members (*Id.* at 27.) Initially, the only Member was defendant Wilbert Hamstra. (*Id.*) The Operating Agreement was later amended to add Wilbert's son, Greg Hamstra, and defendant Mitch Van Kley, as Members. (DE # 105-1 at 4.)

The Operating Agreement also created the position of Manager, the individual who was to be responsible "for the management, conduct, and operation of the business." (DE # 105 at 4.) The Operating Agreement stated that the Manager need not be a Member of the company. (*Id.*) Under the agreement, a new manager could be

elected upon the death, resignation, inability to act, dissolution, bankruptcy, or liquidation of a Manager. (*Id.*) Wilbert was named as the initial manager. (*Id.* at 4.)

A separate "Management Agreement" also existed. (DE # 105-2.) This document set out the terms and conditions of Wilbert's role and compensation as Manager. (*Id.* at 2.) The Management Agreement specified that Wilbert, as Manager, was an independent contractor entitled to a certain amount of monthly compensation for a term of nine years, or until Wilbert's death. (*Id.* at 2-3.) The document also stated that GJMS could not terminate Wilbert's engagement without Wilbert's written agreement. (*Id.* at 2.)

In 2016, Greg and his wife Jodi Hamstra entered into a Mediated Property Settlement Agreement in connection with the dissolution of their marriage. (DE # 104-9.) In that agreement, Greg agreed to assign his entire membership interest in GJMS to Jodi, and committed to "obtain the agreement of the other members to transfer their interests in GJMS to" her. (*Id.* at 3.) Further, Greg "agree[d] to indemnify and hold harmless [Jodi] and GJMS from any management fees payable to Wilbert Hamstra by GJMS after December 31, 2017." (*Id.*)

On June 4, 2016, Wilbert executed an "Assignment of GJMS, LLC Interest," in which he assigned his membership interest to Jodi, and "remove[d] Wilbert Hamstra as the manager of the Company and elect[ed] Jodi Hamstra the sole member of the Company." (DE # 104-10 at 2.) The assignment further states that Wilbert "hereby resigns as the manager of the Company." (*Id.*)

2

GJMS claims that, in December of 2017, Jodi became aware that GJMS had been paying Wilbert pursuant to the Management Agreement for a year and a half despite Wilbert's resignation. (DE # 104 at 5.) GJMS sued Wilbert, Van Kley, and Hamstra Builders, Inc. ("HBI"), the entity that had been delegated to handle management responsibilities for GJMS. (DE # 1.) The lawsuit alleged, amongst other things, theft and conversion under Ind. Code § 35-43-4-2 (Count II) and breach of fiduciary duty (Count III).

Plaintiff has moved for partial summary judgment on Counts II and III. (DE # 103.) Defendants oppose the motion; under defendants' theory, both counts require proof of unauthorized payments, and no unauthorized payments occurred. (*See id.*, DE # 104.) The motion is fully briefed and ripe for ruling.

## II.   LEGAL STANDARD

Summary judgment is governed by Federal Rule of Civil Procedure 56. "[S]ummary judgment is appropriate — in fact, is mandated — where there are no disputed issues of material fact and the movant must prevail as a matter of law." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). The parties' summary judgment burdens depend on whether the movant would ultimately bear the burden of proof on a disputed issue at trial. Where the movant does not bear the burden of proof at trial, the oft-quoted burden-shifting framework of *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986), applies.

However, in the relatively unusual instance (such as this one) where the movant is the same party who would bear the burden of proof at trial, the movant "must show

that the evidence . . . is 'so one-sided that . . . [the movant] must prevail as a matter of law'" in order to obtain summary judgment in its favor. *Reserve Supply Corp. v. Owens-Corning Fiberglass Corp.*, 971 F.2d 37, 42 (7th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *Addicks Servs., Inc., v. GGP-Bridgeland, LP*, 596 F.3d 286, 293 (5th Cir. 2010) (where movant also bears burden of proof, "movant must establish beyond peradventure" all essential elements in order to warrant judgment in his favor); Moore's Fed. Practice 3d, § 56.13[1] (where party moves for summary judgment and bears the burden of proof on the issue, it must show that the evidence is so powerful that no reasonable jury would be free to disbelieve it).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995).

**III.   DISCUSSION**

Plaintiff claims that this is an open-and-shut case, wherein Wilbert resigned as both Member and Manager, terminating all of his rights under both the Operating and Management Agreements, including his rights to monthly payments. Plaintiff suggests that, until December of 2017, Jodi was not aware that Wilbert continued to be paid despite his resignation.

4

Defendants, on the other hand, argue that Wilbert resigned as Manager and Member, but rightfully continued to receive the amount delineated in the Management Agreement through the end of 2017. Defendants state that, during divorce mediation sessions, the parties had discussed that Wilbert should continue to be paid pursuant to the Management Agreement despite Jodi taking over as sole member. (DE # 111 at 3-4.) Van Kley suggests that his decision to sign over his own interests in the company was predicated upon this understanding. (*Id.*) Defendants point to the fact that, in the divorce agreement, Greg "agree[d] to indemnify and hold harmless [Jodi] and GJMS from any management fees payable to Wilbert Hamstra by GJMS after December 31, 2017." (DE # 104-9.) According to defendants, this portion of the divorce agreement demonstrates that all parties involved understood that Wilbert would be paid through December of 2017. Defendants further point out that Jodi's attorney, in an email to defendants' attorney, memorialized the parties' discussions about "allowing GJMS, LLC to continue making payments to Wilbert for some period of time." (DE # 111-2 at 6.) Defendants also highlight that Jodi never questioned the monthly payments to Wilbert for a year and a half (DE # 111 at 5), despite having a plethora of attorneys and financial advisors.

Though a wealth of documents and events form the basis of this case, the minutiae need not be analyzed at length in the context of the present motion, because there exist genuine issues of material fact which prevent plaintiff from obtaining summary judgment on its own claims. First, plaintiff has, itself, put the legitimacy of the Management Agreement into dispute. Plaintiff argues that "someone else" signed the

5

Management Agreement on behalf of GJMS other than Wilbert, and therefore "the company is not bound by its terms." (DE # 112 at 4-5.) This contention raises more questions than it provides answers. For example, if the Operating Agreement designated Wilbert as Manager, but the Management Agreement is purportedly legally questionable, was Wilbert the Manager of GJMS or not? Was he the Manager for purposes of the Operating Agreement, but not the Management Agreement? Can the documents be read separately, with one having legal effect and the other being null and void? If so, what were the terms of Wilbert's role and compensation, before and after the assignments to Jodi? Further, if Wilbert was not properly installed as Manager, could Wilbert resign his role and designate Jodi as his successor? These issues, alone, prevent the court from granting summary judgment for plaintiff, as they change the entire factual landscape of the case and have not been properly briefed by any party.

Further, plaintiff has not demonstrated that *all* reasonable jurors would necessarily find in its favor. Reasonable jurors could certainly side with plaintiff and find that Wilbert resigned, yet continued to collect unauthorized monthly payments from the business. But plaintiff, a summary judgment movant who bears the burden of proof at trial, must show that *no* reasonable juror could side with its opponents. This, plaintiff has not shown. A reasonable juror considering all of the evidence *could* conclude that GJMS paid Wilbert through the end of 2017 as the parties contemplated, however clumsily. Defendants may have a weaker argument, but the relative chances of either side convincing jurors is irrelevant. Plaintiff has not shown that the evidence is so overwhelmingly on its side that *all* reasonable jurors would have to find in its favor. The

6

court will not comment on the merits of plaintiff's claims; this is strictly a decision on the present Rule 56 motion which seeks resolution of the case without a trial. Such a resolution cannot be permitted.

## IV.     CONCLUSION

For the foregoing reasons, plaintiff's motion for partial summary judgment (DE # 103) is **DENIED**.

This case is several years old and deserving of resolution. A tumultuous period of discovery has concluded, and the dispositive motion deadline has passed. This case is now **REFERRED** to Magistrate John E. Martin for purposes of holding a settlement conference in the next 90 days. If such efforts prove fruitless, this case will be set for trial.

**SO ORDERED.**

Date: March 30, 2022

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT